UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALBANEH MOSED,

      Plaintiff,

      v.

CITY OF DETROIT *et al.*,

      Defendants.

_____/

Case No. 2:25-cv-11636
Hon. Gershwin A. Drain

**OPINION & ORDER GRANTING APPLICATION TO PROCEED *IN FORMA PAUPERIS* [ECF No. 3] AND DISMISSING COMPLAINT IN PART UNDER 28 U.S.C. § 1915(e)(2)(B)**

On June 2, 2025, Plaintiff Albaneh Mosed filed this action against Defendants City of Detroit, Uber Technologies, and John and Jane Does 1–10. On June 17, 2025, Mosed filed an application to proceed *in forma pauperis* ("IFP"), or in other words, without prepaying fees and costs. The Court has reviewed Mosed's application to proceed IFP and concludes that Mosed is indigent and entitled to proceed IFP. Upon screening Mosed's complaint under 28 U.S.C. § 1915(e)(2)(B), the Court further concludes that certain legal theories in Count I must be dismissed as frivolous, Count II must be dismissed for failure to state a claim, and the City of Detroit must be dismissed as a defendant.

1

## I. BACKGROUND

Mosed's complaint arises out of events that occurred on August 16, 2023, when he was attempting to return home from work in an Uber. Mosed asked his Uber driver, who is named John Doe 1 in the complaint, to take I-75 back to his house. ECF No. 1, PageID.5. John Doe 1 allegedly became enraged that Mosed would suggest which route to take. He began shouting at Mosed and "taking a long route purposefully." *Id.* At that point, Mosed requested that John Doe 1 take him back to his place of employment. *Id.*

While taking Mosed back to work, John Doe 1 was driving hazardously and did not fully stop the vehicle for Mosed to get out once he reached the destination. *Id.* at PageID.6. Mosed jumped out of the moving vehicle and John Doe 1 ran over his foot. *Id.* Thereafter, John Doe 1 drove off, made a U-turn, and attempted to run Mosed over again. *Id.* Mosed states that he intended to call the police, but that John Doe 1 called them first "in order to evade responsibility and upon awareness that if Plaintiff called the police first then reasonably Defendant John Doe 1 would be prosecuted for assault and battery and assault with a deadly weapon[.]" *Id.* at PageID.6–7.

When Detroit Police Officers (named as John and Jane Doe officers in the complaint) arrived at the gas station, John Doe 1 "concocted a story" that Mosed was brandishing a weapon. *Id.* at PageID.7. Mosed explained his side of the story as

well. *Id.* Detroit Police searched Mosed for the purported weapon and placed him in the back of a police cruiser while they conducted an investigation. *Id.* at PageID.7–8. They found no weapon. *Id.* at PageID.8.

According to Mosed, John Doe 1 admitted to police that he almost ran over Mosed. *Id.* The officers also reviewed security camera footage of the incident. *Id.* However, the officers did not arrest John Doe 1. *Id.*

After the incident, Mosed attempted to obtain a copy of the police report but was denied. The Chief of Police "provided no solid reasoning" for the denial. *Id.* Thereafter, Mosed submitted a Freedom of Information Act ("FOIA") request for the report and for footage and investigative materials. Detroit Police employees (named as John and Jane Doe agents in the complaint) responded that they needed until May 19, 2025 to review the FOIA request; but as of the time that Mosed filed the complaint, they had not responded. *Id.*

As a result of these events, Mosed filed the instant lawsuit against the City of Detroit, John Doe 1, the John and Jane Doe officers and agents 2–10, and Uber Technologies Inc. Counts I and II are for constitutional violations under 42 U.S.C. § 1983 as against the City of Detroit and the John and Jane Doe officers and agents. *See id.* at PageID.9. In Count I, Mosed alleges that the City and the John and Jane Doe officers violated his due process rights when they "failed to provide protective services to Plaintiff," "searched and seized Plaintiff without probable cause in

3

violation of his due process rights[,]" "engaged in nonfeasance," and "deprived Plaintiff of his right to face his accuser in a court of law." *Id.* In Count II, Mosed merely states that the City and the John and Jane Doe agents deprived him "of rights and privileges secured by the United States Constitution." *Id.* Counts III and IV are for assault and battery and intentional infliction of emotional distress as against John Doe 1. Counts V and VI are for vicarious liability and negligence as against Uber Technologies. *Id.* at PageID.10–11.

Mosed also filed an application to proceed IFP. Mosed states that he makes $1,000 every two weeks, he has no property of significant value, he has less than $1,000 in his bank accounts, his monthly expenses are $2,900, and he has $90,000 in debt. ECF No. 3.

## II. LAW & ANALYSIS

### A. Application to Proceed Without Prepaying Fees or Costs

Under 28 U.S.C. § 1915, a court may authorize commencement of civil actions *in forma pauperis*, or in other words, without prepaying fees and costs. 28 U.S.C. § 1915(a)(1). To receive *in forma pauperis* status, a litigant need not "demonstrate absolute destitution." *Lee v. McDonald's Corp.*, 231 F.3d 456, 459 (8th Cir. 2000). Rather, granting *in forma pauperis* status is appropriate if the application demonstrates that "one cannot, because of poverty, afford to pay the costs of litigation and still provide the litigant and his or her family the necessities

of life." *Carroll v. OneMain Fin., Inc.*, No. 1:14-CV-14514-TLL-PTM, 2014 U.S. Dist. LEXIS 181318, at *2 (E.D. Mich. Dec. 31, 2014), *report and recommendation adopted by* 2015 U.S. Dist. LEXIS 10007 (E.D. Mich. Jan. 29, 2015).

The Court has reviewed Mosed's financial circumstances and concludes that Mosed lacks the funds to pay for the costs of litigation while continuing to provide for his own needs, particularly considering the ratio of Mosed's monthly expenses to monthly income. Therefore, the Court GRANTS Mosed's application to proceed without prepaying fees or costs. Having done so, the Court must review the complaint in accordance with 28 U.S.C. § 1915(e)(2)(B).

**B. Section 1915(e)(2)(B) Screening**

Section 1915(e)(2)(B) states that when a case is proceeding *in forma pauperis*, a court "shall dismiss the case at any time"[1] if the court determines that the action is (1) "frivolous or malicious," (2) "fails to state a claim on which relief may be granted," or (3) "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). A claim is legally frivolous if it relies on "indisputably meritless legal theories[.]" *Brand v. Motley*, 526 F.3d 921, 923 (6th Cir. 2008) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)) (quotation marks

---

[1] Although the statute states that a court may dismiss a "case" at any time, courts regularly use § 1915(e)(2)(B) to dismiss individual claims within a complaint. *See, e.g.*, *Jezowski v. Cnty. of Arenac*, No. 16-cv-13242, 2017 WL 2546790 (E.D. Mich. June 17, 2017); *Shaw v. TruGreen*, No. 2:24-cv-02355-JPM-atc, 2024 WL 4996088 (W.D. Tenn. Nov. 19, 2024).

5

omitted). "Any complaint that is legally frivolous would *ipso facto* fail to state a claim upon which relief can be granted." *Hill v. Lappin*, 630 F.3d 468, 470 (6th Cir. 2010).

Furthermore, a complaint may be dismissed for failure to state a claim upon which relief may be granted if it lacks "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (quotation marks omitted). A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). While this standard does not require "detailed factual allegations," a plaintiff's pleadings must raise "more than labels and conclusions[.]" *Bell Atl. Corp.*, 550 U.S. at 555. In other words, the factual allegations must "raise a right to relief above the speculative level." *Id.*; *Iqbal*, 556 U.S. at 679.

  **a.** **The Legal Theories in Count I, Aside from Search and Seizure Without Probable Cause, Are Frivolous**

In Count I, Mosed argues that the City of Detroit and the John and Jane Doe officers violated his due process rights by (1) searching and seizing him without probable cause, (2) failing to provide him protective services, (3) depriving him of his right to face John Doe 1 in a court of law, and (4) engaging in nonfeasance. ECF No. 1, PageID.9.

6

Aside from search and seizure without probable cause,[2] none of the other legal theories are viable under § 1983. Section "1983 alone does not create substantive rights[.]" *Rogers v. City of Port Huron*, 833 F. Supp. 1212, 1216 (E.D. Mich. 1993). "[T]o proceed with a § 1983 claim, a plaintiff must show a deprivation of a constitutional or federal right caused by a person acting under the color of state law." *Woodall v. Wayne Cnty.*, 590 F. Supp. 3d 988, 1004 (E.D. Mich. 2022). Accordingly, "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." *Baker v. McCollan*, 443 U.S. 137, 146 (1979). Nor does "every violation of federal law give[] rise to a Section 1983 claim." *Ellison v. Cocke Cnty., Tenn.*, 63 F.3d 467, 471 (6th Cir. 1995). A § 1983 claim "does not lie where Congress has foreclosed such enforcement of the statute in the enactment itself and where the statute did not create enforceable rights, privileges, or immunities within the meaning of § 1983." *Id.* at 471–72

---

[2] The Fourth Amendment provides that individuals have a right to be free from "unreasonable searches and seizures, and searches and seizures not based on probable cause." *Mobley v. City of Detroit*, 938 F. Supp. 2d 669, 679 (E.D. Mich. 2012). Although Plaintiff asserts that this claim is predicated in due process, it would actually be analyzed under the Fourth Amendment. *See Albright v. Oliver*, 510 U.S. 266, 273 (1994) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." (quotation marks omitted)). Regardless, a § 1983 claim based on an unreasonable search and seizure is, at least, cognizable.

(quoting *Wright v. Roanoke Redevelopment and Hous. Auth.*, 479 U.S. 418, 423 (1987)) (quotation marks omitted).

### i.  Failure to Provide Protective Services

The police are under no constitutional or federal legal duty to provide protective services to an individual. The Constitution "is a charter of negative rather than positive liberties," so it "does not require the federal government or the state to provide services, even so elementary as maintaining law and order." *Rogers*, 833 F. Supp. at 1216 (citations omitted). As such, "police officers are not liable for failure to arrest a third person," *Gilchrist v. City of Livonia*, 599 F. Supp. 260, 262 (E.D. Mich. 1984), nor are they required to provide "protective services, even if those services are necessary to save a life." *Schoenfield v. City of Toledo*, 223 F. Supp. 2d 925, 929 (N.D. Ohio 2002). Thus, to the extent Mosed seeks to prevail on his § 1983 claim because the officers failed to arrest or otherwise protect Mosed from John Doe 1, the claim fails.

To be sure, the Supreme Court has recognized an exception to this rule where there is a "special relationship" between the police and the individual seeking protective services. This exception is limited to instances where the state actor makes an "affirmative act of restraining the individual's freedom to act on his own behalf— through incarceration, institutionalization, or other similar restraint of personal liberty—which… trigger[s] the protections of the Due Process Clause[.]" *DeShaney*

8

*v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989). Mosed has not pled any facts that would indicate such an exception applies in this case. Mosed's interactions with John Doe 1 were "not in the state's compulsion" and he was "not physically placed [in John Doe 1's proximity] by the state." *Rogers*, 833 F. Supp. at 1218. In sum, the police had no duty to render any protective services to Mosed.

ii.   Deprivation of Right to Face John Doe 1 in Court

Individuals have no right to have a crime investigated or prosecuted. *See Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007) ("There is no statutory or common law right, much less a constitutional right, to an investigation."); *White v. City of Toledo*, 217 F. Supp. 2d 838, 841 (N.D. Ohio 2002) ("[T]he law is also clear that there is no 'constitutional, statutory, or common law right that a private citizen has to require a public official to investigate or prosecute a crime.'"); *Fulson v. City of Columbus*, 801 F. Supp. 1, 6 (S.D. Ohio 1992) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."). This is because "[a] public official charged with the duty to investigate or prosecute a crime does not owe that duty to any one member of the public, and thus no one member of the public has a right to compel a public official to act." *Fulson*, 801 F. Supp. at 6. To the extent that individuals seek to influence officials' decisions to investigate and prosecute, they may do so "by public opinion, policy, and the ballot,

9

not litigation against individual officers and their civic employers." *White*, 217 F. Supp. 2d at 841. (quotation marks omitted).

Thus, to the extent that Mosed bases his Count I § 1983 claim on the proposition that the John and Jane Doe officers refused to arrest, investigate, or otherwise charge John Doe 1 as a result of the incident between them, the claim fails.

### iii.    Nonfeasance

Nonfeasance cannot be the basis for a § 1983 claim where the state actors have no affirmative duty to act and the plaintiff suffers no constitutional or statutory deprivation as a result. *See White v. Tamlyn*, 961 F. Supp. 1047, 1062 (E.D. Mich. Mar. 31, 1997) (stating that the plaintiff had no claim under § 1983 for nonfeasance where she "failed to cite any case imposing an affirmative duty" on the police officers and she "suffered no constitutional deprivation as a result" of the alleged nonfeasance).

As discussed, the John and Jane Doe officers had no affirmative duty to take any action on behalf of Mosed. They were not required to protect Mosed from John Doe 1, nor were they required to arrest or investigate John Doe 1. Similarly, Mosed has pointed to no deprivation he suffered under constitutional or federal law as a result of the officers' alleged inaction. Accordingly, Mosed's § 1983 claim based on the officers' nonfeasance is frivolous.

### b.     Count II Fails to State a Claim for Relief

Count II of Mosed's complaint merely states that the City of Detroit and the John and Jane Doe agents "acted under the color of state law in depriving Plaintiff of rights and privileges secured by the United States Constitution." ECF No. 1, PageID.9. Mosed does not identify the facts on which he bases the Count or the rights and privileges of which these Defendants allegedly deprived him. "District judges are not mind readers," and courts are not required "to conjure up questions never squarely presented to them." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (6th Cir. 1985). As such, this claim lacks "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678.

Regardless, the Court infers that Mosed likely intended this Count to relate to the Detroit Police employees who are handling Mosed's FOIA request, and that Mosed alleges their actions constitute a deprivation of due process. *See, e.g.*, ECF No. 1, PageID.4, 8. Mosed's FOIA request was made under Michigan state law, *see* Mich. Comp. Laws §§ 15.232(h), 15.233, because the federal FOIA only applies to information possessed by the U.S. government. *See* 5 U.S.C. §§ 551(1), 552(a). Even if Detroit Police violated Michigan's FOIA, a "violation of state law, such as Michigan's FOIA, does not give rise to a constitutional violation." *Kruse v. Rillema*, No. 1:23-cv-330, 2023 WL 5021870, at *3 (W.D. Mich. June 15, 2023); *see also Yeoman v. Thompson*, No. 94-1392, 1994 WL 683956, at *1 (6th Cir. Dec. 6, 1994)

11

("Yeoman cannot pursue his claim regarding his request for information pursuant to Michigan's Freedom of Information Act under § 1983 as he has not alleged a deprivation of a right secured by the Constitution or laws of the United States."); *Hulshof v. Jurkas*, No. 4:05-CV-152, 2006 WL 2943302, at *6 (W.D. Mich. Oct. 13, 2006) ("An alleged violation of Michigan's FOIA statute fails to state a claim under § 1983. Section 1983 does not provide redress for a violation of state law."). Thus, to the extent that this is the factual basis and legal theory upon which Mosed predicates Count II, it is frivolous.

    c.    **The Complaint Fails to State a Claim Against the City of Detroit**

Even though local governing bodies may be sued under § 1983, they "cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 691 (1978). Accordingly, "[a] municipality sued under § 1983 is liable for damages only if the injury occurs pursuant to municipal custom or policy." *Naturale & Co. v. City of Hamtramck*, 614 F. Supp. 3d 575, 581 (E.D. Mich. 2022). To show the existence of a municipal policy or custom, "a plaintiff can identify: (1) the municipality's legislative enactments or official policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal violations." *Winkler v. Madison Cnty.*, 893 F.3d 877, 901 (6th Cir. 2018). In order to prevail on a § 1983 against a local governing body, the

plaintiff must "connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Naturale & Co.*, 614 F. Supp. 3d at 581.

Here, Mosed failed to allege any facts whatsoever that would support a claim against the City of Detroit. Mosed did not even mention a policy or custom of the City of Detroit, let alone how any policy or custom resulted in constitutional injuries in this case. The claims against the City of Detroit plainly fail to present sufficient factual material under the pleading standards of the Federal Rules of Civil Procedure and the City must be dismissed from the case. *Iqbal*, 556 U.S. at 678.

### III. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that:

1. Mosed's Application to Proceed *In Forma Pauperis* [ECF No. 3] is **GRANTED;**

2. Pursuant to case screening under 28 U.S.C. § 1915(e)(2)(B):

    a. Count I shall proceed on a Fourth Amendment unreasonable search and seizure theory only;

    b. Count II is **DISMISSED** for failure to state a claim; and

    c. The City of Detroit is **DISMISSED** from the case.

    d. Counts III–VI may continue as alleged.

3. The Clerk of Court is **DIRECTED** to issue summons for the remaining Defendants.

   **SO ORDERED.**

Dated: July 15, 2025 /s/Gershwin A. Drain
GERSHWIN A. DRAIN
United States District Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
July 15, 2025, by electronic and/or ordinary mail.
/s/ Marlena Williams
Case Manager